**CITY OF LIVONIA EMPLOYEES'
RETIREMENT SYSTEM,**
Plaintiff,

v.

**WYETH, et al., Defendants.**

**No. 07 Civ. 10329(RJS).**

United States District Court,
S.D. New York.

Sept. 18, 2012.

David Avi Rosenfeld, Samuel Howard Rudman, Robbins Geller Rudman & Dowd LLP, Melville, NY, Laurie L. Largent, Christopher D. Stewart, Tor Gronborg, Trig Randall Smith, Robbins Geller Rudman & Dowd LLP, San Diego, CA, for Plaintiffs.

Alexandra Emily Greif, Lynn Katherine Neuner, Michael Joseph Chepiga, George S. Wang, Bryce Allan Pashler, Chad Henry Atlas, Nicholas Ferris Cohen, Rae Caroline Adams, Simpson Thacher & Bartlett LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

Lead Plaintiff Pipefitters Union Local 537 Pension Fund ("Pipefitters") and named Plaintiff City of Livonia Employees' Retirement System (collectively, "Plaintiffs") bring this putative class action against Defendants Wyeth, Robert Essner, Joseph Mahady, Kenneth Martin, Bernard Poussot, Robert Ruffalo, Jr., and Ginger Constantine ("Defendants"), pursuant to § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act"); Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder; and § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Specifically, Plaintiffs allege that Wyeth defrauded class members by making materially false misstatements and omissions relating to the safety of a drug called Pristiq. Plaintiffs bring this action on behalf of investors who purchased Wyeth's common stock during the period from June 26, 2006 through July 24, 2007 (the "Class Period").

Before the Court is Plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

The Court presumes the parties' familiarity with the specific facts of this case, as set forth in the Court's September 29, 2010 Memorandum and Order denying Defendants' motion to dismiss. *City of Livonia Emps.' Ret. Sys. v. Wyeth,* No. 07 Civ. 10329(RJS), 2010 WL 3910265 (S.D.N.Y. Sept. 29, 2010). As a general matter, this action arises out of Plaintiffs' claim that "Wyeth investors were damaged when they purchased or acquired Wyeth securities during the Class Period at prices that were artificially inflated by Defendants' material misrepresentations and omissions concerning the Company's leading drug candidate, Pristiq, for the treatment of pre-menopausal vasomotor symptoms ("VMS")." (Pl. Mem. 1.) Specifically, Plaintiffs assert that "during the Class Period, Defendants failed to disclose material adverse information about serious cardiovascular and hepatic adverse effects associated with the use of Pristiq." (*Id.* at 1–2.) According to Plaintiffs, on July 24, 2007, "after the FDA refused to approve Pristiq for VMS, ... Defendants revealed 'the potential for serious adverse cardiovascular and hepatic effects associated with the use of Pristiq.'" (*Id.* at 2 (quoting Compl. ¶ 107).) Following that announcement, Wyeth's stock fell $5.70 per share. (*Id.* (citing Compl. ¶¶ 47, 112, 133).)

Plaintiffs filed the present motion on October 21, 2011. The motion was fully briefed as of March 13, 2012 and oral argument on the motion took place on May 10,2012.

## II. CLASS CERTIFICATION STANDARD

To be certified, a class must satisfy the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed.R.Civ.P. 23(a); *In re Salomon Analyst Metromedia Litig.,* 544 F.3d 474, 478 (2d Cir.2008). In addition, the class must also satisfy two additional requirements of Rule 23(b)(3), by demonstrating that "the questions of law or fact common to class members predominate over any questions affecting only individual members ('predominance'), and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy ('superiority')." *Berks Cnty. Emps.' Ret. Fund v. First Am. Corp.*, 734 F.Supp.2d 533, 536 (S.D.N.Y.2010) (quoting *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 18 (1st Cir.2008)) (internal quotation marks omitted). A plaintiff moving for class certification must establish each of the Rule 23 requirements by a preponderance of the evidence. *In re SLM Corp. Sec. Litig.*, 08 Civ. 1029(WHP), 2012 WL 209095, at *3 (S.D.N.Y. Jan. 24, 2012).

"Rule 23 is not a 'mere pleading standard'; rather, 'a party seeking class certification must affirmatively demonstrate his compliance with the Rule.'" *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 43 (S.D.N.Y.2012) (quoting *Wal–Mart Stores, Inc. v. Dukes*, ‒‒ U.S. ‒‒, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)). Accordingly, a district court should "assess all of the relevant evidence admitted at the class certification stage." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir.2008) (internal quotation mark omitted). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal–Mart*, 131 S.Ct. at 2551. However, a motion for class certification following a denial of a motion to dismiss "is emphatically not an opportunity for a second round of review, at a higher standard, no less, of the substantive merits of plaintiffs' underlying claims." *DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468, 476 (S.D.N.Y.2005); *accord Bombardier*, 546 F.3d at 204 (noting that courts must "assure that a class certification motion does not become a pretext for a partial trial of the merits" (internal quotation mark omitted)). Thus, "[t]he only question" at the class certification stage "is whether [plaintiffs] may pursue those claims on behalf of a class of similarly situated persons, or whether they must do so as individuals." *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 281 F.R.D. 134, 141 (S.D.N.Y. 2012) (alteration in original) (quoting *DeMarco*, 228 F.R.D. at 476).

## III. Discussion

Defendants do not dispute that Plaintiffs have met the Rule 23(a) numerosity, commonality, and superiority requirements. Rather, Defendants' opposition to class certification turns on the assertions that: (1) Pipefitters lacks standing to pursue claims on behalf of the proposed class of plaintiffs; (2) Pipefitters is not a typical or adequate lead plaintiff under Rule 23(a); and (3) Plaintiffs have failed to demonstrate that common issues predominate under Rule 23(b)(3). The Court will address these arguments in turn.

### A. Standing

"In a class action, '[t]he initial inquiry is whether the lead plaintiff individually has standing.'" *Indergit v. Rite Aid Corp.*, 08 Civ. 9361(PGG), 2009 WL 1269250, at *3 (S.D.N.Y. May 4, 2009) (quoting *Winer Family Trust v. Queen*, 503 F.3d 319, 325–26 (3d Cir.2007)). Courts in this district have held that, to have standing, a class representative must have purchased the same securities as the class members it purports to represent. *See In re Parmalat Sec. Litig.*, No. 04 MD 1653(LAK), 2008 WL 3895539, at *3 (S.D.N.Y. Aug. 21, 2008) (holding that class members who had bought only ordinary shares, as opposed to debt, lacked standing to bring claims on behalf of class members who purchased debt).

Defendants argue that because Plaintiffs purchased only Wyeth common stock, they lack standing to assert claims on behalf of purchasers who bought any other publicly-traded Wyeth security during the Class Period. However, as set forth in the Complaint, the only security at issue in this case is Wyeth's common stock. (Compl. ¶¶ 47, 106; Pl. Reply 20 n. 10.) Accordingly, the Court finds that Plaintiffs have standing to bring claims on behalf of Wyeth common stock holders.

### B. Typicality

"Rule 23(a)(3)'s typicality requirement is satisfied when 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re NYSE Specialists Sec. Litig.*, 260

F.R.D. 55, 70 (S.D.N.Y.2009) (quoting *Robinson v. Metro–North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir.2001)). To meet the typicality requirement, "[t]he claims need not be identical, but must derive from 'the same general, over-all course of fraudulent conduct.'" *Gerber v. Computer Assocs. Int'l, Inc.*, No. 91 CV 3610(SJ), 1995 WL 228388, at *3 (E.D.N.Y. Apr. 7, 1995). Nevertheless, "[a] court will deny class certification where a class representative may be subject to a unique defense that would 'pose an unacceptable risk of drawing attention away from the central issues in [the] litigation.'" *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. at 45 (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 Civ. 4483(RCC), 2007 WL 1280640, at *5 (S.D.N.Y. Apr. 30, 2007)).

Defendants do not challenge Plaintiffs' assertion that the Wyeth common stockholders' claims arise from the same course of events. Indeed, Plaintiffs have demonstrated that "[a]ll members of the Class seek to prove that Defendants made misleading statements during the Class Period and failed to timely disclose material adverse facts about Pristiq." (Pl. Mem. 15.) Defendants nonetheless contend that Lead Plaintiff Pipefitters is subject to a unique defense—and therefore not typical of the class it purports to represent—because it invested in Wyeth *after* the corrective disclosure and because it did not individually rely on the market.

The record currently before the Court reflects that Pipefitters made four purchases of Wyeth stock, totaling 40,000 shares, between March 3, 2007 and July 24, 2007, including 5,350 shares on July 24, 2007, the day the disclosure about the cardiovascular and hepatic risks associated with Pristiq for VMS was made. (Decl. of Charles T. Hannaford, dated Oct. 21, 2011, Doc. No. 83, ¶ 4; Aff. of David A. Rosenfeld, dated Jan. 14, 2008, Doc. No. 9, Ex. B; Pl. Mem. 15.) Additionally, Pipefitters purchased 7,100 shares of Wyeth stock on August 8, 2007 (Decl. of George S. Wang, dated Jan. 31, 2012, Doc. No. 92, Ex. 15), and 1,050 shares on August 30, 2007 (*id.* at Ex. 13).

▮ Defendants argue that Pipefitters' purchase of Wyeth stock after the May 2007 American College of Obstetricians annual meeting renders it an atypical investor. (*See* Def. Opp'n at 20.) However, Defendants' argument is premised on the notion that the truth about Pristiq was actually disclosed at that meeting. This Court has already rejected that argument. *See City of Livonia*, 2010 WL 3910265, at *5 ("[N]either the poster [at the annual meeting] nor the Prudential report discusses hepatic side effects or the combination of the cardiovascular and hepatic effects."). Accordingly, the fact that Pipefitters purchased shares after the May 2007 meeting does not disqualify Pipefitters from serving as lead counsel.

Defendants additionally argue that Pipefitters' purchases of Wyeth stock after the July 24, 2007 disclosure of the cardiovascular and hepatic risks associated with Pristiq make Pipefitters an atypical investor. But this argument likewise fails. Indeed, courts in this Circuit have acknowledged that:

> the fact that a putative class representative purchased additional shares in reliance on the integrity of the market after the disclosure of corrective information has no bearing on whether or not [the representative] relied on the integrity of the market during the class period.... [Thus, t]he post-disclosure purchase of the additional shares ... will not necessarily present individual issues of reliance that render the investor atypical or inadequate to represent the class members who did not purchase such additional shares.

*In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135 (S.D.N.Y.2008) (first alteration in original) (quoting *In re Salomon Analyst Metromedia*, 236 F.R.D. 208, 216 (S.D.N.Y.2006), *vacated and remanded sub nom. In re Salomon*, 544 F.3d 474). Nor do the cases cited by Defendants compel a different result. To the contrary, while courts have found plaintiffs who have made post-disclosure purchases to be atypical when those plaintiffs possessed information that had not been disclosed to the investing public or when plaintiffs made a "disproportionately large percentage" of their purchases post-disclosure, those circumstances are simply not present here. *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 204 n. 13 (E.D.Pa.2008) ("[T]he Court recognizes that there are cer-

tain limited circumstances under which post-disclosure purchases may defeat an investor's attempt to utilize the fraud on the market presumption, such as when a disproportionately large percentage of the investor's purchases are made *after* a curative disclosure . . . ." (emphasis in original)); *see also, e.g., Rocco v. Nam Tai Elecs., Inc.,* 245 F.R.D. 131, 136 (S.D.N.Y.2007) (finding proposed lead plaintiff atypical when he made purchases after he became aware of the fraud but before the fraud was disclosed to the public).

Given that Pipefitters made several other purchases of Wyeth stock prior to July 24, 2007, and given that its post-disclosure purchases were not "disproportionately large" vis-à-vis Pipefitters' total investment, the Court concludes that Pipefitters' post-disclosure purchases do not present a class conflict sufficient to defeat Plaintiffs' motion for class certification. *See In re Am. Int'l Grp., Inc. Sec. Litig.,* 265 F.R.D. 157, 168–69 (S.D.N.Y. 2010) (rejecting an argument that post-disclosure purchases subject a class representative to unique defenses).

Defendants also argue that Pipefitters is atypical of the proposed class, citing "evidence that [Pipefitters] and its investment managers did not rely on the stock's market price or on Wyeth's alleged misstatements and omissions." (Def. Opp'n 21–22.) As an initial matter, courts in this district have found that "where plaintiff's theory of liability is premised on the 'fraud on the market' presumption,"[1] Defendants' allegations that the lead plaintiffs investments were not made in reliance on alleged misstatements are "largely irrelevant." *Monster Worldwide,* 251 F.R.D. at 134; *see also In re Indep. Energy Holdings PLC Sec. Litig.,* 210 F.R.D. 476, 484 (S.D.N.Y.2002) ("While the extent of any non-reliance on [the part of lead plaintiffs] will certainly be a fact question to be decided at trial, it is unlikely to significantly shift the focus of the litigation to the detriment of the absent class members.").

Additionally, while Pipefitters delegated responsibility over investment deci-sions to outside investment managers, this Court and others have held that neither typicality nor adequacy are defeated when institutional investors give investment managers discretionary authority to make investment decisions. *See Lapin v. Goldman Sachs & Co.,* 254 F.R.D. 168, 178–80 (S.D.N.Y.2008); *see also In re Pfizer Inc. Sec. Litig.,* 282 F.R.D. at 45 (holding that proposed lead plaintiff was not atypical although defendants alleged that the investments were "made through accounts maintained by fourteen outside investment advisors who had 'full discretion and received no input or consultation with [lead plaintiff] itself'" (citation omitted)). Furthermore, although one of the investment firms that made investments for Pipefitters employs a "mathematical theorem that attempts to capitalize on the random nature of stock price movements" (Def. Opp'n 21), this has no bearing on whether the firm or Pipefitters relied on the market price for Wyeth stock when making purchasing decisions. *See In re Pfizer Inc. Sec. Litig.,* 282 F.R.D. at 45 ("At most, [the investment strategies of lead plaintiff's investment managers] show that [those investment managers] took market price *and* other considerations into account when deciding whether to invest in Pfizer stock." (emphasis in original)).

Accordingly, the Court finds that Pipefitters satisfies the typicality requirement of Rule 23(a).

### C. Adequacy

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Literary Works in Elec. Databases Copyright Litig.,* 654 F.3d 242, 249 (2d Cir.2011) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)) (internal quotation marks omitted). To satisfy the adequacy requirement, "the proposed class representatives' interests should not be antagonistic to those of other class members [and] proposed class counsel should be qualified, experienced and able to conduct the litigation." *In re Pfizer Inc. Sec. Litig.,* 282

---

**1.** The "fraud on the market" presumption is dis-cussed in more detail below. *See* Section III.D.

**180**

F.R.D. at 47 (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir.2000)). Defendants do not contest the qualifications of class counsel, but argue that the "monitoring agreement" between Pipefitters and lead counsel, as well as its participation in other actions, make Pipefitters an inadequate class representative. The Court, again, disagrees.

Pipefitters has a "monitoring agreement" with Robbins Geller, proposed lead counsel, under which the firm offers free monitoring services to Pipefitters so that it can find "securities fraud opportunities" upon which Pipefitters can sue. (Def. Opp'n 23.) Based on this arrangement, Defendants argue that Pipefitters is an inadequate class representative. Defendants point to *Iron Workers Local No. 25 Pension Fund v. Credit–Based Asset Servicing & Securitization, LLC*, in which Judge Rakoff criticized monitoring arrangements and found that the arrangement at issue in that case went "far beyond any traditional contingency arrangement ... creat[ing] a clear incentive for [the law firm] to discover 'fraud' in the investments it monitors and to recommend to the Fund's non-lawyer administrator (and, through him, to the trustees) that the Fund, at no cost to itself, bring a class action lawsuit." 616 F.Supp.2d 461, 464 (S.D.N.Y.2009). Defendants fail to observe, however, that in *Iron Workers*, Judge Rakoff nonetheless appointed a lead plaintiff who was represented by counsel as part of a monitoring agreement. *Id.* at 467. Moreover, courts routinely appoint institutional investors with monitoring agreements as lead plaintiffs and class representatives. *See, e.g., In re Gen. Elec. Sec. Litig*, No. 09 Civ. 1951(DC), 2009 WL 2259502, at *6 (S.D.N.Y. July 29, 2009) (finding unpersuasive the argument that potential lead plaintiff "abdicated its oversight role" because counsel may have performed free monitoring services); *Silversman v. Motorola, Inc.*, 259 F.R.D. 163, 173 (N.D.Ill.2009) (rejecting defendants' argument that plaintiffs were inadequate class representatives because they had monitoring agreements with counsel); *In re Am. Italian Pasta Co. Sec. Litig.*, No. 05–0725–CV–W–ODS, 2007 WL 927745, at *5 (W.D.Mo. Mar. 26, 2007) (rejecting claim that monitoring agreement

rendered plaintiff inadequate class representative). Accordingly, the Court finds that the existence of a monitoring agreement between Pipefitters and counsel is in no way disqualifying.

Defendants also argue that Pipefitters' participation in other securities fraud cases renders it an inadequate class representative. Specifically, Defendants allege that Pipefitters' Rule 30(b)(6) representative, Mr. Charles Hannaford, "appeared confused" and unable to "remember basic information about Pipefitters' ongoing cases." (Def. Opp'n 24–25.) However, Defendants argument that such "confusion" "raises serious questions about [Pipefitters'] ability to adequately supervise this litigation" is not supported by the record. (*Id.*) In fact, the evidence available to the Court at this time indicates that Hannaford has extensive knowledge of the present action, reviews pleadings and motions filed in this case, meets with lead counsel regularly, and receives periodic status updates from lead counsel. *See* Aff. of Trig R. Smith, dated Mar. 13, 2012, Doc. No. 95, Ex. 4.; *see also In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. at 50 (finding that lead plaintiff was adequately informed about the case when he "understood the key claims being raised; had attended the *Daubert* hearing[;] reviewed the motion for class certification prior to its filing; receive[d] written updates from Lead Counsel ...; receive[d] copies of most documents that Lead Counsel file[d] in the case; and has discussed any questions or concerns about the case with Lead Counsel"); *Lapin*, 254 F.R.D. at 177 (holding that lead plaintiff was adequately informed because he was "familiar with the facts and legal theories underlying the case, is in regular contact with his lawyers, has met with them, has reviewed the complaint and other case documents, and understands that he is responsible for making decisions that impact the class and representing the class's best interests").

With regard to the adequacy of lead counsel—to which Defendants do not object—this Court agrees with other courts in this district that Robbins Geller is "qualified, experienced, and able to conduct the litigation." *See Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262, 267 (S.D.N.Y.2009) (finding pre-

decessor firm of Robbins Geller to be "qualified to prosecute this action"); *In re Alstom SA Sec. Litig.,* 253 F.R.D. 266, 278 n. 7 (S.D.N.Y.2008) (noting that predecessor firm of Robbins Geller had "significant experience litigating securities class actions").

Thus, the Court is satisfied that Pipefitters has no conflict of interest with other class members and that lead counsel will fairly and adequately represent the class. Moreover, Defendants' counter-arguments do not demonstrate that any conflict of interest or "antagonistic interests" would prevent Lead Plaintiff from "vigorously pursuing the claims of the class." *In re Literary Works,* 654 F.3d at 249 (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir.2006)). Accordingly, the Court finds that Pipefitters is an "adequate" representative under Rule 23(a).

### D. Predominance

 Rule 23(b)(3) "requires the party seeking certification to show that 'questions of law or fact common to class members predominate over any questions affecting only individual members' and that class treatment would be superior to individual litigation." *Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir.2010) (quoting Fed.R.Civ.P. 23(b)(3)). The "predominance requirement tests whether a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *In re Salomon,* 544 F.3d at 480 (quoting *Heerwagen v. Clear Channel Commc'ns,* 435 F.3d 219, 226 (2d Cir.2006)). To meet the requirement, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *Id.* (quoting *Heerwagen,* 435 F.3d at 226). In this case, as in *Salomon,* "the question of whether the predominance requirement is met largely turns on whether and how [Plaintiffs'] fraud-on-the-market presumption" applies in this case. *Id.*

Defendants make two principal arguments with respect to Plaintiffs' purported failure to meet the predominance requirement of Rule 23(b). First, Defendants claim that they have rebutted the "fraud on the market" presumption of reliance described in *Basic*

*Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Second, they claim that Plaintiffs have not met the requirements for the reliance presumption under *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). The Court considers, and rejects, each of these arguments in turn.

#### 1. Presumption under *Basic*

 In *Basic,* the Supreme Court dispensed with the requirement that an investor must prove awareness of a particular misstatement and instead *presumed* reliance where there was a "fraud on the market." 485 U.S. at 245–47, 108 S.Ct. 978. A plaintiff is thus entitled to the *Basic* presumption at the class certification stage—thereby establishing reliance—if it demonstrates by a preponderance of the evidence that "a defendant has (1) publicly made (2) a material misrepresentation (3) about stock traded on an impersonal, well-developed (*i.e.,* efficient) market." *In re Salomon,* 544 F.3d at 483. Once the plaintiff has established that it is entitled to the *Basic* presumption of reliance, the defendant has the opportunity to rebut the presumption. *Id.* at 483. To do so, the defendant must put forth evidence "that severs the link between the alleged misrepresentation and ... the price." *Basic,* 485 U.S. at 248, 108 S.Ct. 978. The *Basic* presumption, "if unrebutted, thus allows plaintiffs to satisfy the element of reliance in securities fraud claims under the 1934 Act." *Hevesi v. Citigroup Inc.,* 366 F.3d 70, 77 (2d Cir.2004).

 Defendants do not contest that the *Basic* presumption applies in this case, and indeed, Plaintiffs have demonstrated by a preponderance of the evidence that: (1) Defendants made public statements about Pristiq, *see City of Livonia,* 2010 WL 3910265, at *5; (2) those statements were material in that they "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available," *Basic,* 485 U.S. at 231–32, 108 S.Ct. 978 (quoting *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)); and (3) Wyeth stock traded on the New York Stock Exchange,

which is a presumptively efficient market, *see Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,* No. 05 Civ. 1898(SAS), 2006 WL 2161887, at *8 (S.D.N.Y. Aug. 1, 2006) ("At the class certification stage . . . if, for example, a security is listed on the NYSE . . . the market for that security is presumed to be efficient."). Rather, Defendants argue that they have rebutted the presumption by demonstrating that "(1) there was no statistically significant price impact on the dates of the alleged misrepresentations and omissions; (2) there was no statistically significant price impact on the dates that the cardiac and hypertension events were disclosed; and (3) the drop in the share price when the hepatic events were disclosed was due to other confounding events, such as the announcement of the FDA's approvable decision." (Def. Opp'n 11.)

In this case—which is primarily about omissions—Defendants' evidence that there was no statistically significant price impact on the dates of the alleged omissions is inapposite. As Defendants' own expert explains, in "a case about *omissions*, . . . conducting event study analysis on the dates of the alleged omissions would not be probative [of price impact] and therefore, one would only look at the alleged corrective disclosure date." (Lehn Tr. at 65:19–24, 65:25–66:8 (emphasis added).) Indeed, many "courts have suggested that a misstatement may cause inflation simply by *maintaining* existing market expectations, even if it does not actually cause the inflation in the stock price to increase on the day the statement is made." *In re Vivendi Universal, S.A. Sec. Litig.,* 765 F.Supp.2d 512, 561 (S.D.N.Y.2011) (emphasis in original); *see also id.* at 562 ("The Court . . . holds that a statement can cause inflation by causing the stock price to be artificially maintained at a level that does not reflect its true value."); *In re Bristol– Myers Squibb Sec. Litig.,* No. 00–1990(SRC), 2005 WL 2007004, at *17 (D.N.J. Aug. 17, 2005) ("[A] misstatement could serve to maintain the stock price at an artificially inflated level without also causing the price to increase further").

In a case such as this, where Plaintiffs argue that the failure to disclose information from Study 315 made Wyeth's statements misleading, the fact that the stock price did not significantly increase on the days in question is not dispositive. Put another way, the fact that the stock price remained consistent could, in fact, indicate inflation. Indeed, in an omission case, the impact of the defendants' misrepresentation should be measured by the stock price reaction following the truth being disclosed to the market. *See Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 173 (2d Cir.2005) ("[T]o establish loss causation, 'a plaintiff must allege' . . . that the misstatement or omission concealed something from the market that, *when disclosed,* negatively affected the value of the security." (emphasis added) (quoting *Suez Equity Investors, L.P. v. Toronto–Dominion Bank,* 250 F.3d 87, 95 (2d Cir.2001))). In this case, Defendants acknowledge that Wyeth's stock price dropped on July 24, 2007, immediately following the disclosure of the safety information regarding Pristiq.

Furthermore, in arguing that there was no statistically significant price impact on the dates that the cardiac and hypertension events were disclosed, Defendants disregard this Court's prior opinion, which specifically concluded that "neither the poster nor the Prudential report [in May 2007] discusses hepatic side effects or the combination of the cardiovascular and hepatic effects." *City of Livonia,* 2010 WL 3910265, at *5. Absent newly presented evidence to the contrary, the Court reaffirms its earlier finding that the information discussed at the October 2006 investor conference did not constitute a "disclosure." Thus, to the extent that Defendants simply recycle arguments made in their motion to dismiss, the Court again rejects those arguments.

Finally, Defendants' assertion that "[t]he evidence does not indicate that the drop was due to information about hepatic events in Study 315" (Def. Opp'n 16), but rather due to other confounding events, is a loss causation argument and, therefore, not appropriate at the class certification stage. *See Erica P. John Fund, Inc. v. Halliburton Co.,* —— U.S. ——, 131 S.Ct. 2179, 2186, 180 L.Ed.2d 24 (2011) (distinguishing between "loss causation" and "transaction causation" and con-

cluding that "[t]he fact that a subsequent loss may have been caused by factors other than the revelation of a misrepresentation has nothing to do with whether an investor relied on the misrepresentation in the first place, either directly or presumptively through the fraud-on-the-market theory"); *Lapin,* 254 F.R.D. at 186 ("[T]he Court finds that Plaintiff need not prove loss causation in order to invoke the *Basic* presumption.").[2]

Of course, the Second Circuit "requires a district court to make a 'definitive assessment' that the Rule 23(b)(3) predominance requirement has been met[, which] cannot be made without determining whether defendants can successfully rebut the fraud-on-the-market presumption." *In re Salomon,* 544 F.3d at 485 (quoting *In re Initial Pub. Offerings Sec. Litig.,* 471 F.3d 24, 41 (2d Cir. 2006)). However, based on the record currently before it, the Court finds that Defendants in this case have not rebutted the *Basic* presumption of reliance.

### 2. Presumption of Reliance Under *Affiliated Ute*

Even if Defendants had rebutted the presumption of reliance under *Basic,* Plaintiff would still be entitled to the presumption of reliance under *Affiliated Ute.* According to *Affiliated Ute,* a plaintiff is entitled to a presumption of reliance when "there is an omission of a *material* fact by one with a duty to disclose." *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.,* 552 U.S. 148, 159, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008) (emphasis added).

At oral argument, Defendants asserted for the first time that the *Affiliated Ute* presumption does not apply because the allegedly omitted facts were not material. (Oral Arg. Tr., May 10, 2012, at 34:15–35:21.) "[T]o fulfill the materiality requirement 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.' " *In re Salomon,* 544 F.3d at 482 (quoting *Basic,* 485 U.S. at 231–32, 108 S.Ct. 978 (quoting *TSC Indus., Inc.,* 426 U.S. at 449, 96 S.Ct. 2126)) (internal quotation marks omitted). Material facts include those "which affect the probable future of the company and those which may affect the desire of investors to buy, sell, or hold the company's securities." *SEC v. Mayhew,* 121 F.3d 44, 52 (2d Cir.1997). On the other hand, "[a]n omitted fact may be immaterial if the information is trivial or is 'so basic that any investor could be expected to know it.' " *Ganino v. Citizens Utilities Co.,* 228 F.3d 154, 162 (2d Cir.2000) (citation omitted) (quoting *Levitin v. PaineWebber, Inc.,* 159 F.3d 698, 702 (2d Cir.1998)).

At oral argument, Defendants suggested that Plaintiffs had not adequately demonstrated that the materiality of the omitted facts was sufficient to trigger the *Affiliated Ute* presumption.[3] (Oral Arg. Tr., May 10, 2012, at 34:15–35:21.) However, the Court has little difficulty concluding that the allegedly omitted safety information about Pristiq would have likely affected the "desire of investors to buy, sell, or hold [Wyeth's] securities." *Mayhew,* 121 F.3d at 52 (quoting *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 849 (2d Cir.1968) (en banc)). Plaintiffs allege that Pristiq was a "pipeline" drug that would replace the lost revenue streams from Effexor and Effexor XR. (Compl. ¶¶ 4, 13.) Plaintiffs further allege that Wyeth saw Pristiq as a drug with "multi-billion dollar potential" (*id.* ¶ 17), and expected "annual sales of $2 billion or more for the drug" (*id.* ¶ 34). Because Pristiq was highly touted as a major revenue-maker for Wyeth, information regarding its safety profile and corresponding

---

**2.** The cases Defendants cite for the proposition that "plaintiffs are responsible ... for showing that the price impact on a particular day was attributable to the disclosure of allegedly withheld information and not other confounding news" (Def. Opp'n 17), were either decided before *Erica P. John Fund, see In re Credit Suisse First Boston Corp. Analyst Sec. Litig.,* 250 F.R.D. 137, 137–38 (S.D.N.Y.2008), or involve the summary judgment stage as opposed to the class certification stage, *see Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Boston,* 853 F.Supp.2d 181, 187 (D.Mass.2012).

**3.** The Court notes that Defendants do not appear to contest materiality with regard to the *Basic* presumption of reliance, even though the materiality standard is identical under both *Basic* and *Affiliated Ute. See In re Sadia, S.A. Sec. Litig.,* 269 F.R.D. 298, 308 (S.D.N.Y.2010).

marketability would very likely affect an investor's decision to buy, sell, or hold Wyeth stock. Moreover, because information concerning the serious adverse effects in Study 315 was known only to a select group, the Court cannot conclude that such information was "trivial" or "so basic that any investor would be expected to know it." *Ganino*, 228 F.3d at 162 (2d Cir.2000) (citation omitted) (quoting *Levitin*, 159 F.3d at 702) (internal quotation marks omitted). Accordingly, the Court reiterates its previous finding and, on the facts before it, concludes that the alleged misrepresentations or omissions with respect to Study 315 were material. *City of Livonia*, 2010 WL 3910265, at *5.

Defendants also argue that Plaintiffs have not demonstrated materiality because "there [was] no stock inflation after the alleged misstatements[,] no stock deflation caused by corrective disclosures[, and] the July 24, 2007 stock drop was due to other, non-actionable events." (Def. Opp'n 18.) However, as discussed above, the stock price is not necessarily expected to rise in the case of omissions. Moreover, the Court has already determined that the "corrective disclosures" to which Defendants refer were not disclosures at all. *City of Livonia*, 2010 WL 3910265, at *5 (finding that the May 5–9, 2007 ACOG conference and the May 2007 Prudential analyst report were *not* corrective disclosures because they did not disclose the possibility of *both* hepatic and cardiovascular SAEs).

■■■ Furthermore, "[a] legal assessment of materiality ... is not determined by a single factor such as price impact, but must take into account all the relevant circumstances in a particular case." *In re SLM Corp. Sec. Litig.*, 2012 WL 209095, at *5 (citing *Matrixx Initiatives, Inc. v. Siracusa-*

no, —— U.S. ——, 131 S.Ct. 1309, 1317, 179 L.Ed.2d 398 (2011)); *see also In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 302 (S.D.N.Y.2010) ("[M]ateriality depends on an assessment of all the relevant circumstances in a particular case ... [and] is influenced by considerations of fairness, probability, and common sense."). Under the facts currently before it, including Wyeth's drug "pipeline" and the looming expiration of patents concerning other Wyeth drugs, the Court concludes that Plaintiffs have sufficiently demonstrated the materiality of the allegedly omitted information.

Regarding the second element of the *Affiliated Ute* presumption—the duty to disclose—Defendants have not asked the Court to revisit its finding that Plaintiffs adequately alleged a duty to disclose the information at issue on the part of Defendants.[4] *See City of Livonia*, 2010 WL 3910265, at *6; (*see also* Oral Arg. Tr., May 10, 2012, at 28:13–14).

■■■ Thus, the Court finds that, on the record before it, Plaintiffs have established by a preponderance of the evidence that they are entitled to the presumption of reliance under *Affiliated Ute*. As discussed above, Defendants have not rebutted that presumption by "demonstrating that the plaintiffs did not in fact rely upon the omission when they made their investment decisions [or by proving] 'that disclosure of' the information that defendants omitted 'would not have altered the[ir] ... investment decision.'" *In re Beacon Associates Litig.*, 282 F.R.D. 315, 330 (S.D.N.Y.2012) (alteration in original) (quoting *duPont v. Brady*, 828 F.2d 75, 76–78 (2d Cir.1987)).

\* \* \*

---

4. As the Court noted in its September 29, 2010 Memorandum and Order, "[w]here the defendant being sued under [a 'conscious misbehavior'] theory is a pharmaceutical company, it is not necessary for the company to 'disclose isolated reports of illnesses suffered by users of their drugs until those reports provide *statistically significant evidence* that the ill effects may be caused by—rather than randomly associated with—use of the drugs and are sufficiently serious and frequent to affect future earnings.'" *City of Livonia*, 2010 WL 3910265, at *6 (quoting *In re Carter–Wallace, Inc. Sec. Litig.*, 150 F.3d 153, 157 (2d Cir.1998) (emphasis added)). "However, 'the Court cannot determine as a matter of law whether such links were statistically insignificant because statistical significance is [ordinarily] a question of fact.'" *Id.* (quoting *In re Pfizer Inc. Sec. Litig.*, 584 F.Supp.2d 621, 635–36 (S.D.N.Y.2008)). Accordingly, the Court found that, "at least at this stage of the litigation," Plaintiffs adequately alleged that Defendants "recklessly omitted the information when making their statements during the Class Period." *Id.* at *7.

Because Defendants have not rebutted the presumption of reliance under either *Basic* or *Affiliated Ute*, the Court finds that Plaintiffs have demonstrated that "questions of law or fact [including reliance] common to class members predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3).

Furthermore, the Court declines Defendants' invitation to pursue an evidentiary hearing regarding predominance. (Oral Arg. Tr., May 10, 2012, at 22:11–13, 33:7–14); *see also Bombardier*, 546 F.3d at 204 ("[D]istrict courts retain 'ample discretion' to limit discovery and 'the extent of the hearing' on Rule 23 issues 'in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.' " (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 41)).

### IV. CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs have satisfied the prerequisites for class certification under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Accordingly, Plaintiffs' motion for class certification is GRANTED. The Clerk of the Court is respectfully requested to terminate the motion located at Doc. No. 80.

The parties are directed to continue discovery as ordered in the May 2, 2012 Scheduling Order. (Doc. No. 99.)

SO ORDERED.